1
2
3
4
5
6
7
8
9
10

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM FOREVER, LLC,<br><br>Defendant. | Case № 2:25-cv-01970-ODW (KSx)<br><br>**ORDER DENYING**<br>**MOTION FOR PARTIAL**<br>**DISMISSAL [32]** |

## I.    INTRODUCTION

Plaintiff James Everett Shelton brings this action against Defendant Freedom Forever, LLC for violating the Telephone Consumer Protection Act ("TCPA").  (First Am. Compl. ("FAC"), ECF No. 30.)  Shelton claims that Freedom Forever placed unsolicited calls and text messages to his residential number.  (*See, e.g.*, *id.* ¶¶ 20–24, 27.)  Freedom Forever moves to dismiss Shelton's First Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), seeking to dismiss Shelton's claims for injunctive relief and attorneys' fees.  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 32.)  For the following reasons, the Court **DENIES** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

In 2015, Shelton registered his residential telephone number on the National Do Not Call ("DNC") Registry.  (FAC ¶¶ 3, 25.)  Beginning in August 2022, he received multiple telemarketing calls from agents associated with Freedom Forever.  (*Id.* ¶ 27.)  This included a phone call and confirmation email from Corey Macklin of Freedom Forever's subsidiary, Boundless, Inc.  (*Id.* ¶ 28.)  On May 16, 2023, Shelton emailed Macklin requesting a copy of the company's DNC Policy.  (*Id.* ¶ 29.)  Macklin did not respond to Shelton's inquiry and Shelton never received a copy of Boundless's or Freedom Forever's DNC Policy.  (*Id.* ¶¶ 30–31.).  Between May 31 and June 1, 2024, Freedom Forever sent Shelton three unsolicited text messages promoting solar panels.  (*Id.* ¶ 32.)   On August 20, 2024, Shelton filed this action asserting that Freedom Forever's unsolicited communications violate the TCPA.  (Compl. ¶¶ 50–59, ECF No. 1.)

In September 2024, after Shelton initiated this litigation, representatives of Bright Solar Marketing LLC, a marketing arm of Freedom Forever, contacted him with additional unwanted communications.  (FAC ¶¶ 38–44.)  These communications included a text message on September 12, a phone call on September 16, additional text messages on September 16 and 17, and two more calls on September 17.  (*Id.*)  Shelton asserts that these communications also violated the TCPA because the calls were "unwanted" and the encounters were "nonconsensual."  (*Id.* ¶¶ 49–50.)

Freedom Forever now moves to dismiss portions of the First Amended Complaint under Rule 12(b)(6).  (Mot.)

## III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).   To

---

[2] All factual references derive from Shelton's First Amended Complaint unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.    DISCUSSION

Freedom Forever moves to dismiss Shelton's requests for (A) injunctive relief, and (B) attorneys' fees. (Mot. 1.)

### A.    Injunctive Relief

Freedom Forever first seeks dismissal of Shelton's request for injunctive relief under the TCPA. (*Id.* at 3–5.) Freedom Forever argues that Shelton lacks Article III standing because the most recent alleged call, on September 17, 2024, is too remote to establish that Shelton faces a real and immediate threat of future harm. (*Id.*) Shelton responds that he adequately alleges standing to seek injunctive relief. (Opp'n 4–9, ECF No. 36.) He points to the telemarketing communications from Freedom Forever that have continued during this litigation. (*Id.* at 4–5.)

Although Freedom Forever brings the Motion under Rule 12(b)(6), the argument that Shelton cannot establish Article III imminent future harm is properly

construed as a jurisdictional challenge under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)."); *Iten v. County of Los Angeles*, 81 F.4th 979, 985 (9th Cir. 2023); (Mot. 2–3 (stating the standard for Rule 12(b)(6) and arguing for dismissal for lack of Article III standing).) A court also has a *sua sponte* duty to evaluate Article III standing at any time during the proceedings, as subject matter jurisdiction cannot be waived and must be addressed whenever it is in question. Fed. R. Civ. P. 12(h)(3).

Pursuant to Rule 12(b)(1), a party may move to dismiss based on a court's lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack accepts the truth of the plaintiff's allegations but asserts they "are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A factual attack, "by contrast, contests the truth" of the allegations "by introducing evidence outside the pleadings." *Id.* In either case, the party invoking federal jurisdiction bears the burden of establishing it. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

Article III limits federal jurisdiction to actual "Cases" and "Controversies." U.S. Const. art. III, § 2. To establish standing, a plaintiff must allege an injury that is "concrete and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016).

A plaintiff seeking an injunction must also demonstrate a "real [and] immediate threat" of repeated harm, not merely the possibility of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (holding that a threatened injury must be "certainly impending" to constitute an injury in fact). This requires showing a "sufficient likelihood" that the plaintiff will

"be wronged in a similar way" in the future. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Courts have recognized this standard is met where ongoing practices create a likelihood that the harmful conduct will recur. *See, e.g.*, *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119–20 (9th Cir. 2020) (finding plaintiff had standing to seek injunctive relief where defendant's ongoing retention of private messages, coupled with risk of future use, demonstrated continuing harm); *c.f.*, *Kingsbury v. U.S. Greenfiber, LLC*, No. 2:08-cv-00151-DSF (AGRx), 2013 WL 12114077, at *4 n.9 (C.D. Cal. Nov. 5, 2013) (finding injunctive relief unwarranted because the plaintiff made no "showing that the challenged action is being continued or repeated" (citing *Scripps Health v. Marin*, 72 Cal. App. 4th 324, 332 (1999)).

Here, Shelton alleges a series of unwanted communications spanning multiple years. (FAC ¶¶ 27–44.) In August 2022, a Boundless representative affiliated with Freedom Forever called Shelton and sent a follow-up email. (*Id.* ¶¶ 27–28.) On May 31 and June 1, 2024, a Freedom Forever agent sent him three additional text messages. (*Id.* ¶ 32.) Then, in September 2024, while this litigation was pending, representatives of Bright Solar, a marketing arm of Freedom Forever, sent Shelton three text messages and placed three calls over several days. (*Id.* ¶¶ 36–44.)

Shelton's allegations more closely resemble cases where courts found a plausible inference of future violations, where nothing suggested a defendant had stopped or would likely stop the challenged practices. *Sasin v. Enter. Fin. Grp., Inc.*, No. 2:17-cv-04022-CBM (RAOx), 2017 WL 10574367, at *7 (C.D. Cal. Nov. 21, 2017); *Bell v. Hawx Servs., LLC*, No. 2:24-cv-00825-DC-DMC, 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). For instance, in *Sasin*, the court held that allegations of calls over a twelve-month period plausibly supported standing to seek injunctive relief, despite a six-month gap before suit. 2017 WL 10574367, at *7. And in *Bell*, the court found standing for injunctive relief where the defendant retained the plaintiff's number and gave no assurances it would cease calling. 2025 WL 2533371, at *4. Like the plaintiffs in those cases, Shelton plausibly alleges a pattern of ongoing

telemarketing contacts without assurances of cessation.  This supports a reasonable inference that future violations may occur.

The cases to which Freedom Forever points are inapposite.  (Mot. 4 (first citing *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016); and then citing *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-cv-00221-BTM-JLB, 2024 WL 3367536, at *8 (S.D. Cal. July 9, 2024)).)  For instance, in *Miller*, the court held that the threat of future injury was "too speculative" because the defendant had stopped making calls months before suit and honored opt-out requests.  2016 WL 7471302, at *4.  And in *Brown*, the court found no standing where the alleged misconduct consisted of only three calls in one month, over a year before the litigation.  2024 WL 3367536, at *7–8.  By contrast, Shelton asserts continued and repeated calls and texts over a span of several years, including after he initiated this litigation.  (FAC ¶¶ 27, 32, 36; Opp'n 4.)  Freedom Forever provides no assurances that the challenged conduct will cease.  (*See generally* Mot.; Reply, ECF No. 37.)

Freedom Forever's repeated contacts spanning multiple years, including communications during this litigation, support a reasonable inference that future violations could occur.  *See Dioquino v. Sempris, LLC*, No. 2:11-cv-05556-SJO (MRWx), 2011 WL 13127143, at *4 (C.D. Cal. Dec. 8, 2011) (denying dismissal of injunctive relief based on lack of standing where defendant offered no evidence that the harm would not recur).  Accepting Shelton's allegations as true at this stage, *Iqbal*, 556 U.S. at 678, the Court finds that Shelton adequately alleges standing to pursue injunctive relief under the TCPA and **DENIES** Freedom Forever's Motion to Dismiss this claim.[3]

---

[3] In light of this disposition, the Court need not reach Freedom Forever's argument for dismissal of Shelton's Rule 23(b)(2) class allegations.  (*See* Mot. 5–6.)

**B.    Attorneys' Fees**

Freedom Forever also seeks dismissal of Shelton's request for attorneys' fees under the TCPA.  (Mot. 1, 6–7; FAC, Prayer for Relief ¶ G.)  Under the "American Rule," each party bears its own fees unless a statute or contract provides for fee-shifting.  *Carbonell v. I.N.S.*, 429 F.3d 894, 897–98 (9th Cir. 2005).

Freedom Forever correctly argues that Shelton cannot recover attorneys' fees under the TCPA, because the TCPA does not contain a fee-shifting provision.  (Mot. 1, 6–7.)  Shelton does not contend otherwise and concedes that the TCPA does not support an award of attorneys' fees.  (Opp'n 9–10 ("Plaintiff does not contend that the TCPA is a fee-shifting statute.").)  Accordingly, there is no dispute that attorneys' fees are unavailable under the TCPA.

However, in his First Amended Complaint, Shelton requests "[a]ttorneys' fees and costs, as permitted by law, including under the Class Action Fairness Act and out of any common fund established as a result of a class settlement or judgment."  (FAC, Prayer for Relief ¶ G.)  Freedom Forever does not address the availability of attorneys' fees under non-TCPA theories.  (*See generally* Mot.)  As Freedom Forever limits its Motion to challenging attorneys' fees under the TCPA itself, the Court declines to reach Shelton's non-TCPA attorneys' fee theories at this time.

As Shelton does not dispute that attorneys' fees are unavailable under the TCPA, the Court **DENIES AS MOOT** Freedom Forever's Motion as to this claim.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Freedom Forever's Motion for Partial Dismissal of Shelton's First Amended Complaint.  (ECF No. 32.)

**IT IS SO ORDERED.**

October 14, 2025

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**